Wesley D. **BIRDWELL** and wife, Shirley Faye Birdwell, Plaintiffs,

v.

**HARTSVILLE MOTORS, INC.,**
Defendant.

Civ. A. No. 74–402.

United States District Court,
M. D. Tennessee,
Nashville Division.

Dec. 2, 1975.

James L. Smith, Goodlettsville, Tenn., for plaintiffs.

Charles K. Smith, Hartsville, Tenn., for defendant.

DANIEL HOLCOMBE THOMAS, Senior District Judge.

The above-styled cause was heard by the Court without a jury and taken under submission on the 15th day of September 1975. Having considered the testimony, exhibits, stipulations and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This action was brought by the plaintiffs, Wesley D. Birdwell and wife, Shirley Faye Birdwell, citizens and residents of Tennessee, against the defendant, Hartsville Motors, Inc., a corporation organized under the laws of the State of Tennessee under the provisions of the law relating to motor vehicle odometer tampering enacted by Congress in 1972, pursuant to Subchapter IV of the Motor Vehicle Information and Cost Savings Act. 15 U.S.C.A. §§ 1981–1991.

2. The plaintiffs assert that the defendant, Hartsville Motors, Inc. (Hartsville) through its agents, violated 15 U.S.C.A. § 1981 *et seq.* The plaintiffs further assert that said violation was willful and with intent to defraud the plaintiffs and therefore, the plaintiffs are entitled to damages, actual cash losses and reasonable attorney fees from the defendant. In defense, Hartsville denies that it has wilfully violated 15 U.S.C.A. § 1981 *et seq.*, with the intent of defrauding the plaintiffs. Moreover, the defendant asserts that it should not be held liable for any damages and attorneys fees to the plaintiffs.

3. It is undisputed that on or about March 16, 1974, the plaintiffs went to the place of business of the defendant with the intention of purchasing a family automobile. While at Hartsville Motors, they came in contact with Mr. John Gregory (Gregory), a salesman, and Aubrey Williams (Williams), the sales manager for the defendant. Both Williams and Gregory were agents of the defendant Hartsville. On this occasion the plaintiffs were shown a 1973 Plymouth Fury Grand Coupe, vehicle serial # PP23M3DI40468. Finding this vehicle to be suitable, the Birdwells commenced negotiations with Gregory and Williams.

4. Prior to purchasing the vehicle the plaintiffs noticed in examining the vehicle that the odometer had approximately 2,600 miles. During the negotiations both Gregory and Williams informed the plaintiffs that this was the actual mileage on the automobile. Shortly thereafter, the plaintiffs arrived at a price with Williams in the sum of $5,351.21. After an allowance for a trade-in and the addition of finance charges, the sum of $4,046.72 was financed with the First American National Bank to purchase the 1973 Plymouth Fury. (Pl. Ex. 5)[1]

---

1. References preceded by "Pl. Ex." are to the exhibits admitted into evidence during the trial on behalf of the plaintiff.

5. The defendant admits that at the termination of the sale the plaintiffs were not given a disclosure form as to the true mileage of the vehicle, or a form showing that the true mileage of the vehicle was not known, as required by law.[2] The plaintiffs allege that the failure of the defendant, through its agents, to disclose the actual mileage constitutes fraud.

6. Within several days following the purchase of the automobile, the plaintiffs began to experience operational and mechanical difficulty with the vehicle. Mr. Birdwell testified that he submitted an extensive list of needed repairs on three separate occasions to the defendant and that a "mass of troubles" with the vehicles has amounted to hundreds of dollars.[3] The plaintiff further testified that the repairs made to the automobile by the defendant were minimal and totally inadequate to compensate the plaintiffs for damages and defects at the time the vehicle was purchased. Hartsville asserts in defense that during the early part of April 1974, it installed a new vinyl top, muffler and headliner on the automobile.

7. The vehicle in question was placed into service on October 26, 1972, at which time it was used as a demonstration model. It remained on the Hartsville lot until it was sold to the plaintiffs. Williams testified that he drove the vehicle back and forth to work. Although the vehicle was with the defendant car dealer for approximately seventeen months, Williams testified that he only used the car for a six month period.

8. Subsequently, the plaintiffs contacted James McCann, a service representative of Chrysler Motors Corporation and in discussing the problems that he was having with the vehicle was informed by McCann that the odometer had been replaced.[4] McCann testified that he did not see the plaintiff's car, but from the information that he received from Mr. Birdwell, concluded that the odometer had been replaced. According to McCann, the test used to determine whether the odometer has been replaced is to examine the tenth's digit and if that particular digit shows a red color then the odometer has been replaced.[5] In the instant case the plaintiffs' odometer has a red tenth's digit. (Pl. Ex. 6)

2. 15 U.S.C.A. § 1988. Disclosure requirements upon transfer of ownership of motor vehicle; promulgation of rules, violations. (a) Not later than 90 days after October 20, 1972, the Secretary (on Odometer Reliability and Security) shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:
(1) Disclosure of the cumulative mileage registered on the odometer.
(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled. Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained.
(b) It shall be a violation of this section for any transferor to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure required by such rules.

3. The plaintiff submitted a list of repairs to the defendant on March 25, 1974, April 5,

1974, and May 13, 1974. (Pl. Ex. 1, 2, 3, 4) Although the lists are somewhat lengthy, several of the more noticeable defects included spark plugs that were completely burnt out, a loose vinyl top, a hole blown out of the side of the muffler and brakes that were badly worn-out.

4. 15 U.S.C.A. § 1982. Definitions. As used in this subchapter—(1) the term "odometer" means an instrument for measuring and recording the actual distance a motor vehicle travels while in operation; but shall not include any auxiliary odometer designed to be reset by the operator of the motor vehicle for the purpose of recording mileage on trips.

5. The witness testified that an odometer that has not been replaced would have a black on white tenth's digit instead of the red replacement. According to the witness, this method of detection has been in existence for approximately two years. This testimony was corroborated by Williams who stated that he was aware of this odometer detection test.

The plaintiffs maintain that the odometer was replaced by the defendant. Hartsville asserts in defense that it did not alter or replace the odometer. The defendant further avers that if in fact the odometer was replaced it was not aware of this information at the time that the automobile was sold to the Birdwells. The plaintiffs admit that the photo exhibit produced at trial showing the red digit on the odometer was taken in May 1975. Based on the evidence produced at trial, the Court finds that the odometer on the 1973 Plymouth Fury Grand Coupe has been replaced; however, the Court finds that the plaintiffs have failed to prove that the defendant tampered with the odometer at any time when the automobile was in the possession of the defendant or under the custody or control of the defendant's agents. Therefore, the plaintiffs have failed to prove by a fair preponderance of the credible evidence that the odometer was altered or replaced prior to March 16, 1974, at the time that the vehicle was purchased by the plaintiffs. The Court further finds that the defendant failed to provide the plaintiffs with a disclosure certificate of mileage as required under 15 U.S.C.A. § 1988. Notwithstanding the failure of the defendant to furnish this disclosure form, the Court is of the opinion that there is no proof that the defendant intended to conceal any material facts from the plaintiffs or that the defendant attempted to mislead or deceive the plaintiffs as to the true mileage and condition of the automobile. Accordingly, the Court finds no evidence that the defendant, through its agents, knowingly failed to furnish the plaintiffs with an odometer affidavit with an intent to defraud the plaintiffs.

## CONCLUSIONS OF LAW

On the basis of the foregoing facts, the Court makes the following Conclusions of Law:

1. The Court has jurisdiction over this matter under 15 U.S.C.A. § 1989(b).[6]

2. The plaintiffs herein assert that the defendant violated the Odometer Requirements as set forth in 15 U.S.C.A. §§ 1981–1991. In order to determine the purpose of the odometer tampering laws it is necessary to view the Congressional intent which is expressed in part in 15 U.S.C.A. § 1981:

§ 1981. Congressional findings and declaration of purpose.

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this title (15 U.S.C.A. §§ 1981–1991) to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor

6. 15 U.S.C.A. § 1989. Civil actions to enforce liability for violations of odometer requirements; amount of damages, jurisdiction; period of limitation.

(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) An action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises.

vehicles having altered or reset odometers.

Pub.L. 92–513, Title IV, § 401, Oct. 20, 1972, 86 Stat. 961.

■■■ 3. In the instant case, the defendant admits that it did not furnish the plaintiffs with a disclosure form. The Court finds that the failure to provide the odometer mileage affidavit constitutes a violation of the Motor Vehicle Information and Cost Savings Act.[7] 15 U.S.C.A. § 1988(a); 49 C.F.R. § 580.4; *Stier v. Park Pontiac, Inc.*, 391 F.Supp. 397, 400 (S.D.W.Va.1975); *Small v. Vaughn Porsche-Audi, Inc.*, Civil No. 74–226 (M.D.Tenn., filed Nov. 19, 1974); *Delay v. Hearn Ford*, 373 F. Supp. 791, 795 (D.S.C.1974). However, the question to be determined is whether liability can be imposed under 15 U.S.C. A. § 1989(a) absent the specific finding that there has been an "intent to defraud" on the part of the defendant.[8] In ascertaining the Congressional purpose of punishing odometer tamperers it seems that recovery is appropriate under § 1989(a) only where the plaintiffs can establish an intent to defraud and where this fraudulent intent arises from the failure of the defendant to provide the plaintiffs with a disclosure statement. *Small v. Vaughn Porsche-Audi, Inc., supra.* As stated previously, the Court finds that there was no intent to defraud on the part of the defendant in failing to provide a disclosure statement and therefore, the Court finds that the plaintiffs are not entitled to damages under 15 U.S.C.A. § 1989(a). (See Finding 8)

■ 4. The plaintiffs further assert that the defendant has violated 15 U.S. C.A. § 1984[9] by replacing or tampering with the odometer on the automobile so that the actual mileage was not disclosed to the plaintiffs. In support of this contention, the plaintiffs rely primarily on *Delay v. Hearn Ford*, 373 F.Supp. 791 (D.S.C.1974). However, *Delay* is clearly distinguishable from the case at bar in that in the former, the plaintiff traded his automobile to the defendant car dealer. At the time of the trade the odometer read approximately 72,000 miles. Subsequently, the plaintiff repurchased the same vehicle from the defendant that he had traded in originally and as the plaintiff was driving home noticed that the odometer now read less than 49,000 miles. Unable to obtain an adequate explanation from the defendant, the plaintiff filed suit. After a hearing of a motion for summary judgment the Court stated:

"From these facts a reasonable inference arises that sometime between December 23, 1972 and January 19, 1973, the roll back of the odometer was done by or for defendant through its agents. This would only seem logical since, during the entire time in which the plaintiff claimed the alteration in mileage took place, the car was under the dominion and control of the defendant. Such a conclusion is compelled, absent a showing by defendant as to when such roll back occurred and

**7.** See note 2, *supra.* The Act's legislative history expressing the Congressional intent and purpose of the statute appears in 3 U. S.Code & Admin.News, pp. 3960, 3970–72 (1972).

**8.** The intent to defraud requirement is explicitly set forth in 15 U.S.C.A. § 1989(a) and from a reading of the legislative history of the Act it seems that liability does not arise under § 1989(a) unless there has been fraudulent intent. This observation becomes more apparent when the section is compared with section 1990. Unlike section 1989(a), section 1990 authorizes the Attorney General to seek injunctive enforcement of the odometer laws. Moreover, the intent to defraud requirement is not needed in order for the Attorney General to seek injunctive relief. Clearly, the language of the 1989(a) provision restricts the scope of civil liability. *Small v. Vaughn Porsche-Audi, Inc.*, Civil No. 74–226 (M.D.Tenn., filed November 19, 1974).

**9.** 15 U.S.C.A. § 1984. Unlawful change is mileage indicated on odometer. It is unlawful for any person or his agent to disconnect, reset, or alter the odometer of any motor vehicle with the intent to change the number of miles indicated thereon.

by whom it was done. Defendant is in a far better position than anyone else to make such information available to this court. At first reading it appears defendant has violated 15 U.S.C.A. § 1984." [10]

In the instant case, the facts are before the Court and from the evidence presented at trial the plaintiffs have failed to prove that the defendant, through its agents altered, replaced, or tampered in any way with the plaintiffs' vehicle. Absent proof that the defendant tampered with the odometer when the automobile was in its possession or under its custody and control, the Court is unable to find that the defendant has violated 15 U.S.C.A. § 1984. Therefore, the Court is of the opinion that the defendant is not liable to the plaintiffs for damages under 15 U.S.C.A. § 1989(a)(1).

The Court further finds that the defendant is not liable to the plaintiffs for costs together with reasonable attorney fees pursuant to 15 U.S.C.A. § 1989(a)(2).

A decree will be entered in accordance herewith.

### JUDGMENT

This cause came on for final hearing by the Court without a jury on the pleadings and proof of the respective parties and was taken under submission. The Court after due deliberation entered its Findings of Fact and Conclusions of Law.

It is therefore ordered, adjudged and decreed by the Court that a judgment be and hereby is, entered in favor of the defendant and against the plaintiffs.

Costs taxed against the plaintiffs.

10. 373 F.Supp. 791, 795 (D.S.C.1974).