**James C. BYRNE, Plaintiff,**

v.

**AUTOHAUS ON EDENS, INC., an Illinois Corporation, Defendant.**

**No. 79 C 815.**

United States District Court,
N. D. Illinois, E. D.

March 20, 1980.

James C. Byrne, Chicago, Ill., for plaintiff.

Max Rittenberg, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

*Motion for Summary Judgment*

MAROVITZ, Senior District Judge.

Plaintiff James C. Byrne brings this action *pro se* against Autohaus On Edens, Inc. under the Motor Vehicle Information and Cost Savings Act (the "Act"), 15 U.S.C. §§ 1981–91. Pending before the Court is defendant's motion for summary judgment on plaintiff's claims. Fed.R.Civ.P. 56. For the reasons set forth below, defendant's motion is granted.

The Act, and the regulations promulgated thereunder,[1] create a federal regulatory scheme designed, *inter alia*, to prevent the alteration of motor vehicle odometers, 15 U.S.C. § 1984, and to ensure that transferors of motor vehicles supply their transferees with accurate odometer information. 15 U.S.C. § 1988. More specifically, section 1984 makes it unlawful for any person to alter an odometer with the intent to change the number of miles recorded thereon. Section 1988 requires that each transferor of a motor vehicle issue to the transferee a statement disclosing the cumulative mileage registered on the vehicle's odometer and, if the odometer reading is known by the transferor to be less than the number of miles the vehicle has actually travelled, disclosing that the actual mileage is unknown. The transferor's statement must be signed by the transferor and bear the date of transfer. 49 C.F.R. § 580.4. In addition, section 1988 prohibits a transferor from knowingly making any false statements when making the disclosures required by

the Act. 15 U.S.C. § 1988(b). The primary purpose of the Act is to better enable owners of motor vehicles to know the condition and value of their motor vehicles. S.Rep. No.413, 92d Cong., 2d Sess. *reprinted in* [1972] U.S.Code Cong. & Admin.News p. 3960.

Section 1989 provides that any person who violates any of the Act's provisions with an intent to defraud shall be liable for three times the plaintiff's damages or $1,500.00, whichever is greater, and plaintiff's costs and attorney's fees.[2] Section 1989(b) establishes federal jurisdiction for actions brought under the Act. In addition, section 1989(b) creates a statute of limitation of two years "from the date on which the liability arises."

The purpose of Congress's creation of a private right of action with punitive, as well as compensatory remedies, is to punish persons who tamper with odometers and to reward persons who discover tampering. *E. g., Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397 (S.D.W.Va.1975); *Delay v. Hearn Ford,* 373 F.Supp. 791 (D.S.C.1974). In light of this two-pronged Congressional objective, the courts have interpreted the Act to permit a purchaser to bring an action for a violation of the Act against any prior transferor in the motor vehicle's chain of title.[3]

Rule 56 provides in, pertinent part, that summary judgment is appropriate when the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court finds the following facts to be established by the pleadings before it. In De-

---

1. All of the provisions of the Act except 15 U.S.C. § 1988(a) became effective on January 20, 1973. 15 U.S.C. § 1981. Section 1988(a) became effective on October 20, 1972. *Id.* The first set of regulations promulgated under the Act became effective on March 1, 1973. *See* 38 Fed.Reg. 2978.

2. The Act does not specifically limit the bringing of private causes of action for violations of sections 1984 and 1988 to motor vehicle purchasers. *See* 15 U.S.C. § 1989. Apparently, however, constitutional limitations upon the ju-

dicial power of the courts limit the bringing of actions for violations of sections 1984 and 1988 to purchasers of motor vehicles. *See, e. g., Moore v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1972).

3. One judicially imposed caveat to this broad principle of liability is that transferors who have violated the Act may not recover against a prior transferor. *Stier v. Park Pontiac, Inc.,* 391 F.Supp. at 401.

cember 1972, the motor vehicle which is the subject of this action was transferred to the defendant. Rosengarden Affidavit, ¶ 5. At that time, the vehicle's odometer registered approximately 80,000 miles. Anthony Deposition, p. 17. In February 1973, the vehicle was transferred by defendant to a Mr. Hile. Rosengarden Affidavit, ¶ 5. Defendant did not furnish Hile with an odometer statement as required by the Act. *Id.* At the time Hile purchased the vehicle, the odometer registered approximately 30,000 miles. Hile Deposition, p. 4. When Hile subsequently discovered that the vehicle's actual mileage exceeded the mileage recorded on the odometer by approximately 50,000 miles, he brought a complaint against defendant before the Consumer Protection Division of the Illinois Attorney General. *See id.,* p. 10. The dispute between defendant and Hile was settled as a result of defendant's repurchase of the vehicle from Hile in August 1973 for a price approximately $250.00 in excess of what Hile had paid to defendant. Defendant's Exhibits C and D. When defendant repurchased the vehicle, Hile furnished defendant with a signed and dated statement which disclosed the odometer reading at that time to be 40,493 miles and further disclosed that the actual mileage was unknown. Defendant's Exhibits E and F.

Defendant thereafter transferred the vehicle to a Ms. Maurer in October 1973. Rosengarden Affidavit, ¶ 9. The defendant furnished Maurer with the identical odometer statement it had received from Hile. *Id.* ¶ 10. This statement is a printed form which bears the following language:

> Federal regulations require you to state the odometer mileage upon transfer of ownership. An inaccurate statement may make you liable for damages to your transferee, pursuant to § 409(a) of the Motor Vehicle Information and Cost Savings Act of 1972, Public Law 92–513.

Defendant's Exhibits E and F. The statement nowhere bore either defendant's name or the signature of one of its agents. Further, the statement did not bear the date of transfer of the vehicle to Maurer.

Thereafter, Maurer in June 1976 transferred the vehicle to a Mr. Shabica. Shabica in May, 1978 transferred the vehicle to plaintiff. Neither the Maurer-Shabica nor the Shabica-plaintiff transfer was accompanied by an odometer statement. The vehicle is now allegedly in need of substantial repairs.

The instant action was commenced on March 2, 1979 pursuant to section 1989(b) of the Act. Count I of plaintiff's two-count complaint alleges that defendant turned back the odometer on plaintiff's vehicle in February and October 1973 in violation of section 1984 of the Act. Plaintiff, however, has now abandoned his claim that defendant turned back the vehicle's odometer in October, 1973. Plaintiff's Response Brief, p. 1. Count II alleges that defendant violated section 1988(a) and (b) when it transferred the vehicle to Maurer without furnishing her with its own odometer statement. Apparently, the sole basis for plaintiff's assertion of a violation of 1988(b) is his contention that by giving Hile's odometer statement to Maurer, defendant knowingly made a false statement to Maurer in that Hile's statement indicates the true mileage to be unknown when defendant allegedly knew the vehicle's actual mileage. *See* Plaintiff's Response Brief, p. 13. Plaintiff alleges actual damages in the amount of $3,000.00, which sum is the estimated cost of repairs presently needed by the vehicle. Defendant has filed a third party complaint against Maurer and Shabica which seeks indemnity against the third-party defendants for any liability that may be imposed upon defendant as a result of the principal action.

Defendant has raised the applicable two-year statute of limitation as a bar to plaintiff's claims. 15 U.S.C. § 1989(b). As stated above, section 1989(b) provides that actions brought under the Act are barred if not brought "within two years from the date on which the liability arises." *Id.* If the statute of limitations began to run from the dates upon which defendant allegedly violated the Act, it is clear that plaintiff's action is time-barred. Plaintiff, however,

argues that defendant's alleged liability arose within the meaning of the Act when he discovered sufficient facts to put him on notice of defendant's alleged violations of the Act.

The legislative history is silent as to how the Act's statute of limitation is to be applied. Consequently, the Court approaches the issue presented herein without the aid of any Congressional guidance, other than Congress's announcement of the purposes to be served by the Act. Further, the issue is virtually one of first impression for the courts. The only reported case which the Court has discovered on this question held that liability arises upon the date of the plaintiff's discovery. *Levine v. MacNeil*, 428 F.Supp. 675 (D.Mass.1977).

█ The Court agrees with the basic finding made in *Levine*. The Act makes actionable only violations thereof which were committed with an intent to defraud. Therefore, since actions under the Act are founded upon fraudulent conduct, federal courts are bound to employ the federal "discovery rule" when applying the statute of limitation set forth in the Act. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). *See also Morgan v. Koch*, 419 F.2d 993 (7th Cir. 1969). *See generally* Dawson, *Undiscovered Fraud and Statutes of Limitation*, 31 Mich. L.Rev. 591 (1933). The federal discovery rule provides that statutes of limitation applicable to actions sounding in fraud begin to run either from the date a plaintiff discovers the fraud or from the date that plaintiff could have in the exercise of reasonable diligence discovered the fraud.[4] *Holmberg v. Armbrecht*, 327 U.S. at 397.

Therefore, the Court finds that the Act's statute of limitation begins to run from the date of either discovery or constructive discovery of the violation.

In the instant case, for the reasons set forth below, the Court finds that Hile discovered sufficient facts to apprise him of defendant's alleged violation of section 1984 prior to August, 1973 and that Maurer constructively discovered sufficient facts to apprise her of defendant's alleged violation of section 1988 in October, 1973. Thus, the precise question presented herein, and upon which the *Levine* decision is uninstructive,[5] is whether discovery or constructive discovery of a particular violation of the Act by *any* owner of the motor vehicle causes the statute of limitation to run as against all subsequent owners, or whether the statute only begins to run as against a particular owner upon his discovery or constructive discovery.

█ Statutes of limitation run against a cause of action, not against the holder thereof. 51 Am.Jur.2d § 20. Although an owner's violation of the Act is actionable in favor of any subsequent owner, *e. g., Delay v. Hearn Ford*, 373 F.Supp. 791, clearly only one action may be maintained under the Act for a single violation. Stated differently, a violation of the Act creates a single cause of action, not as many causes of action as there might be subsequent owners. It is a generally accepted principle of law that when a wrong becomes actionable is the time when the applicable statute of limitation begins to run. 51 Am.Jur.2d § 4107. A violation of the Act, therefore, becomes actionable when any potential

---

4. The rule which provides that statutes of limitation for fraud actions do not begin to run until discovery is to be distinguished from the doctrine of fraudulent concealment applicable to all actions. The doctrine of fraudulent concealment deprives a defendant of the benefit of the statute of limitation when the plaintiff establishes that the defendant undertook some affirmative act to conceal the cause of action from the plaintiff until the expiration of the statutory period. *See generally* Dawson, *Undiscovered Fraud and Statutes of Limitation*, 31 Mich.L.Rev. 591 (1933).

5. The *Levine* court's discussion of the application of the Act's statute of limitation is confined to the following single sentence: "[w]here the gravamen of the complaint is the fraudulent concealment of a material fact, it would seem to be in accordance with general principles of law to hold that the date of discovery is the starting point for the running of the statute, and I so hold. [citation omitted]." Apparently, the facts in *Levine* did not require that court to engage in a more thorough examination of the fashion in which the Act's statute of limitation should be applied.

plaintiff has a right of action; *i. e.*, upon that person's discovery or constructive discovery of the violation. Therefore, it is the Court's view that the Act's statute of limitation begins to run as to a violation of the Act as against all potential plaintiffs at the time any person having standing to sue discovers or constructively discovers the violation, absent some act of fraudulent concealment.

■ Accordingly, knowledge possessed by an owner of a motor vehicle as to a previous owner's possible violation of the Act should be imputed to all subsequent owners, much in the same manner that contract law provides that assignees possess only those rights possessed by the assignor. *E. g., McCloskey & Co. v. Wright*, 363 F.Supp. 223, 227–28 (E.D.Va.1973). *See generally* Corbin, *Contracts* § 892. Although the Court does not mean to suggest that transferors and transferees of motor vehicles stand in an assignor-assignee relationship with respect to actionable violations of the Act, considerations similar to those which obtain in an assignment situation compel the Court to conclude that an owner of a motor vehicle should stand in no better position than his transferor as to any violations of the Act by a remote owner.

Moreover, the odometer statement provisions of the Act, in effect, provide that knowledge of any violation of the Act which is possessed by an owner of a vehicle will be related to all subsequent owners. 15 U.S.C. § 1988. For example, if an owner learns either that a previous owner tampered with the odometer or that the odometer statement given to him was incorrect, upon transfer of the vehicle he is required by section 1988 to state that the true mileage of the vehicle is unknown. The Act envisions that when a statement indicates that the true mileage is unknown, the recipient of the statement is thereby put on notice that the vehicle's odometer reading is not to be relied upon and that he should make an independent investigation of the vehicle's condition and value. S.Rep.No. 413, 92d Cong., 2d Sess. *reprinted in* [1972] U.S.Code Cong. & Admin.News at p. 3971.

■ Finally, the Court finds that its interpretation of section 1989 is buttressed by an examination of the policies presumably underlying the Act's statute of limitation and does not significantly frustrate the central purposes of the Act. Congress's insertion of a statute of limitation into the Act reflects "a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free from stale claims in the time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). Statutes of limitation are statutes of repose, and reflect the basic notion of fairness that litigants and courts should not be involved in actions where the search for truth may be seriously impaired by the passage of time. *Id.; Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). To interpret the instant statute of limitation so that it begins to run only upon the plaintiff's discovery or constructive discovery of a violation, without regard to any knowledge of that violation possessed by prior owners and potential plaintiffs, would effectively undermine the policy considerations inherent in Congress's enactment of a statute of limitation. Such an interpretation could subject a violator of the Act to potential liability throughout the life of a vehicle. This would be true even though the alleged violator's transferee was aware of the alleged violation of the Act and had slept on his rights. The Court refuses to find that Congress intended such an inequitable result.

Further, it can not be said that the Court's interpretation today will significantly remove any of the teeth from the Act's bite. Once a violation has been discovered by a vehicle owner, before a subsequent owner will be misinformed as to the vehicle's mileage another violation of the Act will have had to occur somewhere along the portion of the chain of title extending from the owner who discovered the violation to the subsequent complaining owner.

This is precisely what happened in the instant case. Because Maurer and Shabica failed to comply with section 1988, plaintiff's judgment as to the condition and value of the vehicle was erroneously based upon the odometer reading. Although plaintiff cannot recover against either Maurer or Shabica unless their failure to furnish an odometer statement was accompanied by an intent to defraud, it is their failure to comply with the Act which most proximately caused the injuries of which plaintiff complains.

■ Having interpreted the Act as discussed above, the Court finds that there are no genuine factual issues present in the instant record which are material to the question of whether plaintiff's claims are time-barred. As to plaintiff's allegation set forth in Count I that defendant violated section 1984 of the Act, it is clear from the record that Hile discovered that alleged violation more than two years before the commencement of this action. Accordingly, Count I of plaintiff's complaint is time-barred by section 1989.[6]

Count II alleges that defendant violated section 1988 of the Act when it failed to prepare and furnish Maurer with its own odometer statement and by not informing Maurer of the vehicle's actual mileage. In this connection, the Court first notes that the Act does not impose upon a transferor a duty to disclose a vehicle's actual mileage when he knows the odometer reading to be inaccurate and knows the actual mileage of the vehicle. 15 U.S.C. § 1988. Such a requirement would appear to be salutary in view of the purposes of the Act, and perhaps the Act should be amended accordingly. However, it was apparently Congress's judgment that the disclosure goals of the Act could be satisfactorily met solely by the requirement that a transferor who knows the odometer reading to be inaccurate state that the actual mileage is unknown. *See* S.Rep.No.413, 92d Cong., 2d Sess. *reprinted in* U.S.Code Cong. & Admin.News at p. 3971.

Moreover, the Administrator of the Act has considered the desirability of promulgating a regulation requiring transferors to disclose a vehicle's actual mileage when they do know that it is different from that recorded on the odometer and has declined to do so. 42 Fed.Reg. 38907 (1977). Subsection (b) of section 1988 was added to the Act primarily to make it unlawful for owners to certify that the odometer reading is accurate and, therefore, to require them to certify that the vehicle's actual mileage is unknown, when they know that the mileage certificate which they received from their transferor was inaccurate. S.Rep.No.413, 92d Cong., 2d Sess. *reprinted in* U.S.Code Cong. & Admin.News at p. 3971.

In any event, the Court finds that the alleged violations of section 1988 committed by defendant in connection with its transfer of the vehicle to Maurer are also time-barred. More specifically, the Court finds that as a matter of law Maurer had constructive knowledge of defendant's alleged violations of section 1988 at the time the vehicle was transferred to her in October, 1973, more than two years prior to the commencement of this action. When Maurer purchased the vehicle she was furnished with the statement given defendant by Hile. It is apparent from the face of this statement that defendant's transfer to Maurer was in violation of the Act. The previously quoted printed matter on the statement coupled with the absence from the statement of defendant's name or one of its agent's signatures should have put Maurer on notice that defendant's failure to furnish her with its own statement was a violation of the Act.

In short, although questions of reasonableness do not often lend themselves to disposition by way of summary judgment, *e. g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), in light of the statement given Maurer, the Court finds that she could have discovered defendant's alleged

---

6. In addition, plaintiff's section 1984 claim is likely barred since Hile apparently entered into a valid final settlement with the defendant as to

his claim that defendant had altered the vehicle's odometer.

actionable violation of section 1988 in October 1973 had she exercised due diligence. Accordingly, Count II of plaintiff's complaint is time-barred.

The Court is not blind to the strong support in the record for plaintiff's allegation that defendant tampered with the odometer in his vehicle prior to its sale to Hile, and that as a result of the chain of events begun by that likely tampering, plaintiff was wronged. Nor is the Court unmindful that the injury alleged by plaintiff and the wrong allegedly committed by the defendant are precisely the type of injury and wrongful conduct to which the Act is addressed. Further, the Court finds it unfortunate that defendant apparently reaped a net profit as a result of its sale, repurchase, and resale of the vehicle. The Court is of the opinion, however, that the Act's statute of limitation does not reasonably admit itself of any other interpretation than the one which the Court has given it today. Further, the undisputed facts of this case reveal plaintiff's claims to be time-barred.

In conclusion, defendant's motion for summary judgment is hereby granted. Accordingly, this action is hereby dismissed.[7]

7. Since the third-party action herein is one for indemnity, the Court dismisses it as well.